UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| TERRI K,<br><br>                 Plaintiff,<br>     v.<br><br>ACTING COMMISSIONER OF SOCIAL SECURITY,<br><br>                 Defendant. | Case No. 3:21-cv-05220-TLF<br><br>ORDER REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS |

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) for judicial review of defendant's denial of plaintiff's application for disability insurance benefits ("DIB"). Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and Local Rule MJR 13, the parties have consented to the jurisdiction of a Magistrate Judge. Dkt. 3. Plaintiff challenges the ALJ's decision finding that plaintiff was not disabled. Dkt. 1, Complaint.

PROCEDURAL HISTORY

Plaintiff filed her application for DIB on April 20, 2015, alleging a disability onset date of April 15, 2015. Her date last insured was December 31, 2020. Her application was denied initially and upon reconsideration. AR 277, 287.

On January 6, 2017, ALJ Paul Gaughen conducted a hearing and issued a favorable decision finding plaintiff disabled on June 16, 2017. AR 225-76, 298-309. The Appeals Council on October 13, 2017 vacated ALJ Gaughen's decision and remanded

1

the case for further proceedings. AR 310-18. After conducting a second hearing on January 16, 2019, ALJ Gaughen issued an unfavorable decision on February 8, 2019, finding plaintiff not disabled. AR 191-224, 319-40. Plaintiff requested review by the Appeals Council, which issued an order remanding the case again, to a different ALJ. AR 549-51, 341-44.

ALJ Allen Erickson held plaintiff's third hearing on August 18, 2020, and issued an unfavorable decision on September 2, 2020. AR 158-90, 345-67. The Appeals Council declined the request for review and plaintiff filed an appeal to this Court. AR 368-72, 373-76. On September 27, 2021, the case was remanded under sentence six of 42 U.S.C. § 405(g) based on the stipulation of the parties due to issues with the hearing transcript. AR 377-80.

ALJ Erickson held the fourth hearing on September 29, 2022, and issued an unfavorable decision on October 6, 2022. AR 101-58, 386-416. Plaintiff filed written exceptions to the Appeals Council on November 4, 2022, and the Appeals Council remanded this case to a third ALJ. AR 666-86, 417-23.

In its May 26, 2023 order, the Appeals Council noted that it was remanding the case for a reevaluation of the claimant's alleged symptoms and cannabis use and for further development of the record. AR 419-20.

ALJ David Johnson conducted a fifth hearing on February 8, 2024, and obtained expert testimony from psychologist Dr. Jay Toews, Ed. D. AR 76-100. ALJ Johnson found Dr. Toews' testimony disjointed and contradictory and therefore sought interrogatories from a different medical expert. AR 4. Plaintiff's counsel objected to the interrogatories and, despite overruling these objections, the ALJ conducted a sixth

hearing to obtain testimony from a third medical expert, Dr. Paul Wiese, Ph.D. AR 4-5, 37-75. ALJ Johnson issued an unfavorable decision finding plaintiff not disabled on September 25, 2024. AR 1-36. Plaintiff sought judicial review of this decision by reinstating her former case. *See* Dkt. 20, Stipulated Motion to Reopen Case and Set Briefing Schedule.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of Social Security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017) (internal citations omitted). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019) (internal citations omitted). The Court must consider the administrative record as a whole. *Garrison v. Colvin,* 759 F.3d 995, 1009 (9th Cir. 2014). The Court also must weigh both the evidence that supports and evidence that does not support the ALJ's conclusion. *Id.* The Court may not affirm the decision of the ALJ for a reason upon which the ALJ did not rely. *Id.* Rather, only the reasons identified by the ALJ are considered in the scope of the Court's review. *Id.*

## THE ALJ'S DECISION

ALJ Johnson issued an unfavorable decision finding plaintiff not disabled on September 25, 2024. AR 1-36. He determined plaintiff had a combination of impairments, were severe when considered together. AR 9. He described these impairments as being "variously characterized in the evidence" and included

3

characterizations of depressive disorders, anxiety disorders, substance use disorder/marijuana use and panic disorder. *Id.*

The ALJ found the following impairments non-severe: history of renal disease/injury; cardiomyopathy; osteoarthritis; onychomycosis; right foot dysfunction; status post multiple foot surgeries; degenerative disc disease; and status post rib fracture. AR 9-10. The ALJ found that plaintiff could perform a full range of work at all exertional levels with the following non-exertional limitations:

> [work that] consists of simple tasks; that is the same tasks over and over; that follows a set routine; that does not require more than occasional interaction with coworkers or supervisors; that does not require more than occasional, superficial interaction (such as "good morning" or "here is the item") with the general public; that is quota-based, rather than production-paced; that provides notice and instruction for changes requiring adaptation; and that does not require more than occasional changes requiring adaptation.

AR 14. Based on hypotheticals posed to the vocational expert (VE) at the hearing, the ALJ concluded at step four that there were jobs that existed in significant numbers in the national economy that plaintiff could perform. AR 23.

Plaintiff argues that the ALJ erred by 1) finding that caring for her grandchild was substantial gainful activity; 2) rejecting Dr. Levine's opinion without proper evaluation; 3) failing to fully develop the record by not ordering cognitive testing; 4) improperly discounting her subjective symptom testimony; and 5) failing to cite germane reasons for rejecting the lay witness statements. *See* Dkt. 25 at 3, 5, 12, 16. The Commissioner contends that the ALJ properly developed the record, reasonably discounted plaintiff's testimony, lay witness statements, and Dr. Levine's opinion, and that the ALJ's consideration of plaintiff's babysitting was not prejudicial. Dkt. 27 at 2, 5, 13, 15.

DISCUSSION

### 1. Failure to Develop the Record

Plaintiff argues the ALJ failed to develop the record with respect to the limiting effects of her mental impairments by failing to order a consultative examination. Dkt. 25 at 9. The Commissioner contends the ALJ fulfilled any obligation to develop the record by obtaining medical expert testimony as instructed by the Appeals Council's remand order. Dkt. 27 at 5; *see also* AR 417-23.

Plaintiff has requested a consultative neurocognitive examination be ordered (the requests have been made at least four times during the life of this case, including at the most recent hearing in 2024). AR 1045, 1079 (written requests for CE); 42-43, 195-97 (oral requests for CE). The ALJ denied the most recent request, stating that the regulatory requirements were not met and, citing to the Appeals Council's remand order, "a consultative exam of current functioning would likely be of limited probative value due to the remote date last insured." AR 5 (citing AR 419). Citing the remand order, the ALJ obtained testimony from medical experts through supplemental hearings and interrogatories.

This Court does not have authority under Section 405(g) to review an Appeals Council remand order, as it is an intermediate agency decision. *Boyd v. Astrue*, 2011 WL 3881488, at *2 (W.D. Wash. July 18, 2011) (whether the ALJ complied with the AC order is not within the authorized scope of review for the district court).

While not analyzing the accuracy or legal authority for the AC's remand order, the Court may consider the context of the current ALJ's decision. The ALJ cited the AC's order, which specified that the record did not appear to be fully developed; the AC noted that plaintiff had alleged brain damage following a drug overdose and that a CE

5

was previously ordered (though never completed) "due to concerns that the claimant may be further limited given her presentation at the hearing." AR 419.

The Defendant argues that "in light of the remote period at issue, a consultative examination assessing current functionality would likely be of limited probative value." AR 419; Dkt. 27 at 5. This position is in direct contravention with Ninth Circuit precedent. See Taylor v. Comm'r of Soc. Sec. Admin., 659 F.3d 1228, 1232 (9th Cir. 2011) (quoting Lester v. Chater, 81 F.3d 821, 832 (9th Cir. 1996)) ("this court has specifically held that medical evaluations made after the expiration of a claimant's insured status are relevant to an evaluation of the preexpiration condition."); Smith v. Bowen, 849 F.2d 1222, 1225 (9th Cir. 1988) (holding "reports containing observations made after the period for disability" that retrospectively analyze the claimant's pre-expiration condition "are relevant to assess the claimant's disability.").

The ALJ has a duty to "fully and fairly develop the record and to assure that the claimant's interests are considered," even when the claimant is represented by counsel. Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983). An ALJ's duty to develop the record is only triggered where there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001). An ALJ may discharge this duty in several ways, one of which is to order a consultative examination. See 20 C.F.R. § 404.1519a ("We may purchase a consultative examination to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow us to make a determination or decision on your claim.").

The Commissioner typically "has broad latitude in ordering a consultative examination." *Reed v. Massanari,* 270 F.3d 838, 842 (9th Cir. 2001). But there are some cases that "normally require a consultative examination," including those where the additional evidence needed is not in the records of the claimant's medical sources or when highly technical or specialized medical advice is needed. *Id.*; *see also Donna S. v. Kijakazi*, 2022 WL 17970216, at *4 (N.D. Cal. Sept. 7, 2022).

There is some documentation starting in November 2013, and in the follow-up medical records of the drug overdose and brain injury she alleges caused her impairment. AR 1547 (MRI of brain, "findings can be seen in global anoxic injury"); 1554, 1581-1582 ("MRI brain changes supportive of anoxic brain injury." and stating that once she is awake, a psychiatric assessment will be necessary); 1612 ("Encephalopathy/b/L globus pallidus and R frontal stroke -2/2 anoxic BI, improving");1252 (cognition and impaired memory may be related to anoxic brain injury). The specific symptom of memory loss is also documented at various points in the record. *See* AR 1244-1246, 1252 (notes from GroupHealth psychiatry dated January 2014 and June 2015, speech therapy to help with modalities and strategies to improve memory; progress hindered by delayed cognition and impaired memory); 1187 ("future: explore loss of memory"); 1691-92 (memory challenges, unable to do serial 7s); 1216 (has trouble remembering or identifying what makes her anxious); 1262 -1263 (GroupHealth mental health notes from March 2015 show "diminished ability to think or concentrate" and "does not remember well"); 1322 (plaintiff reports to therapist in the latter part of 2015 that "[s]he couldn't remember things and feels like that difficulty started when she had an accidental overdose with her medication.").

Plaintiff's memory difficulties are documented at length in her function reports and the witness statements from her husband and two daughters. AR 889-936, 971-74, 1015-20.

Plaintiff's counsel noted in August 2020 that copays and deductibles for insurance were high, and plaintiff could not afford mental health treatment, which is why there were not more recent mental health assessments or treatment records. AR 164. Further, plaintiff's presentation across the hearings in this case suggest plaintiff may have more severe cognitive limitations than that documented in the medical records. On numerous occasions, plaintiff forgot the question she was asked immediately after being asked (AR 87, 117, 123, 238, 243, 238), lost her train of thought in the middle of a sentence (AR 114, 139, 247), had difficulty understanding questions (AR 85, 97, 129-30, 137, 269), and struggled to provide detailed answers (AR 122, 124, 166, 173, 175). At the first hearing on January 6, 2017, plaintiff stated, "I'm not mentally sound. I can't remember things." AR 275. At the third hearing on August 18, 2020, plaintiff stated that she did not have a memory of recent past or distant past. AR 174. During the fourth hearing, plaintiff stated that in the spring of 2015 she could not remember how to drive to where her daughter worked, could not recall what she ate for dinner the night before, and she thought she had been tested but could not recall. AR 121-22. She said she felt embarrassed about losing her memory and did not mention it to her physicians or to other people. AR 146-47. At the fifth hearing, plaintiff could not recall when or why she lost her job, and she was not sure about when her drug overdose happened. AR 87.

The record remains ambiguous concerning the cognitive impairment and the extent of the limitations caused by it. The ALJ's duty to further develop the record as to

plaintiff's cognitive impairment was therefore triggered. As a neurocognitive psychological examination to specifically test cognitive function could reasonably be expected to clarify this ambiguity, the ALJ should have ordered a consultative exam. *Celaya v. Halter,* 332 F.3d 1177, 1183 (9th Cir. 2003).

The Commissioner argues the ALJ discharged his duty to develop the record by obtaining medical expert testimony. Dkt. 27 at 5. Yet none of the experts had evaluated plaintiff. The ALJ made an effort to develop the record by consulting three psychologists after the latest remand from the Appeals Council. *See generally* AR 83-85, 88-96 (testimony of Dr. Toews); 44-58 (testimony of Dr. Wiese); 1812-20 (interrogatory response from Dr. Williams). Yet the ALJ failed to elicit evidence from these experts about plaintiff's cognitive issues and limitations. In addition, Dr. Williams states, in response to interrogatories dated 3-18-2024: "Claimant's medical records do indicate a history of mental health diagnosis but it is difficult to determine potential severity. . . [O]bjective psychological assessment could be useful in determining the presence and potential severity/impact on daily life of mental health concerns when the claimant is free of drugs/alcohol. Without objective psychological assessment the best estimate is that the claimant is able to perform most simple tasks." AR 1820.

As Dr. Williams' discussion in response to the 2024 interrogatories reflects, plaintiff's medical history shows that numerous physicians documented opioid addiction in remission, and daily use of marijuana. Dr. Toews also testified that medical records showed that plaintiff used marijuana nightly and her use was escalating, although he was unsure of the dates. AR 90-93. Dr. Wiese testified plaintiff was reporting continuous marijuana use in August 2015, plaintiff admitted to chronic marijuana use, and this could

affect her symptoms and treatment of mental health conditions. AR 48-49, 51-52. Yet the ALJ only made fleeting reference to marijuana use (AR 5, 9, 18-20) and did not develop the record about drug use disorder and whether the history of opiate abuse, history of a drug overdose, and chronic marijuana use would affect plaintiff's mental health symptoms and limitations.

Thus, the ALJ did not fulfill his duty to develop the record. *See Virgil C.H. v. Kijakazi*, 2023 WL 8784955, at *10 (D. Alaska Dec. 19, 2023) (ALJ did not fulfill duty by supplementing record where the additional medical records were mostly unrelated to the symptoms plaintiff described in his testimony).

The ALJ erred by failing to order a consultative examination concerning plaintiff's cognitive condition and related symptoms and limitations, such as potential effects from drug use disorder. The ALJ's decision is therefore not supported by substantial evidence. *See Alderson v. Saul,* 859 Fed. Appx. 25, 27 (9th Cir. 2021) (quoting *Celaya v. Halter,* 332 F.3d 1177, 1183 (9th Cir. 2003)) ("In cases where an ALJ fails to develop the record, courts "cannot conclude that the ALJ's decision is based on substantial evidence…[when taking] the totality of [the claimant's] mental condition into account.""); *see also Roy v. Astrue*, 2009 WL 3157461, at *5 (E.D. Cal. Sept. 25, 2009) (ALJ's decision unsupported by substantial evidence where additional evidence obtained did not render record adequate for proper consideration of the evidence).

**Harmless Error**

An error that is inconsequential to the non-disability determination is harmless. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006). The Ninth Circuit has consistently treated an ALJ's failure to adequately develop the record as

reversible legal error. See *Garcia v. Comm'r of Soc. Sec. Admin.,* 768 F.3d 925, 932 n.10 (9th Cir. 2014); *Kish v. Colvin*, 552 Fed. App'x 650, 651 (9th Cir. 2014) ("When the severity of a claimant's disorder cannot be determined, the appropriate course is to request a consultative examination, and failure to do so is good cause for remand.").

A more complete assessment of plaintiff's cognitive abilities may result in a revised RFC and potentially change the disability determination. The ALJ's error here was therefore not harmless. On remand, the ALJ shall develop the record, including an order for a neuropsychological evaluation to clarify plaintiff's medical situation and limitations, and shall reassess plaintiff's RFC accordingly.

### 2. Substantial Gainful Activity

Plaintiff argues that the ALJ failed to apply the appropriate standard when he found that she engaged in substantial gainful activity (SGA) as a "caregiver" during the relevant period because she babysat her grandchild. Dkt. 25 at 3.

If the ALJ finds a claimant engaged in SGA during the relevant time period, benefits are denied for that period. 20 C.F.R. § 404.1520(a)(4)(i). If a claimant has not engaged in SGA, the disability evaluation process moves on to the next step. 20 C.F.R. § 404.1520(a)(4).

Here, the ALJ found that between August 2015 and January of 2017, plaintiff engaged in substantial gainful activity by babysitting her grandchild "at or beyond what might be considered a full-time schedule." AR 8. Yet the ALJ continued to apply the five-step evaluation for the rest of the alleged period of disability, noting that his findings in this respect would also apply to the time period at issue, even if the work was not SGA. AR 9.

Any error with respect to this substantial gainful activity finding would be harmless. A step one error is harmless where the ALJ does not deny the claim based solely on the step one finding but considers the remaining steps in the sequential evaluation process. *Conant v. Kijakazi*, 2021 WL 3422762, at *1 (9th Cir. Aug. 5, 2021); *see also Noe C. v. Comm'r of Soc. Sec.*, 2020 WL 8361908, at *2 (E.D. Wash. Dec. 10, 2020) (ALJ's step one error harmless where the ALJ proceeded with the analysis for the remainder of the adjudicative period).

### 3. Medical Evidence

Plaintiff argues that the RFC is not supported by substantial evidence because the ALJ erroneously discounted the opinion of Dr. Levine without proper evaluation. Dkt. 25 at 5. Plaintiff filed her application before March 27, 2017, therefore under the applicable regulations, "a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001).

The standard governing an ALJ's discounting of the medical evidence differs for each type of physician. "In discounting a 'non-examining, non-treating doctor's opinion,' an ALJ must provide 'reference to specific evidence in the medical record.'" *Irwin v. Bisignano*, 2025 WL 1734466, at *1 (9th Cir. June 23, 2025) (quoting *Farlow v. Kijakazi*, 53 F.4th 485, 488 (9th Cir. 2022)). An ALJ must also consider whether each opinion is supported by evidence, consistent with the record, and consider factors such as a source's specialized knowledge about disability programs or an area of medicine. 20 C.F.R. § 404.1527(c)(1)-(6).

#### a. Specialty

The ALJ gave Dr. Levine's opinion little weight because, in part, Dr. Levine was not "a specialist in the field in question." AR 21. Earlier in the same paragraph the ALJ stated "Dr. Levine is an orthopedic specialist and focused his assessment solely on the orthopedic evidence." *Id.* The record shows Dr. Levine is a board-certified orthopedic surgeon; therefore, the ALJ did not have substantial evidence on which to determine Dr. Levine was not qualified as a specialist in the field in question (plaintiff's right foot dysfunction). AR 1651-53. Accordingly, the Court finds it was error to discount Dr. Levine's opinion on this basis.

### b. Review of the Record

The ALJ also noted that Dr. Levine did not consider the entirety of the record. "[T]he extent to which a medical source is familiar with the other information in your case record" is a relevant factor that the agency will consider in deciding the weight to give a medical opinion. 20 C.F.R. § 404.1527(c)(6)

"[W]hen non-examining physicians provide opinions without the benefit reviewing the entire record, their ability to render an accurate medical opinion is greatly diminished, particularly compared to treating or examining physicians, who have the benefit of both reviewing the record and also an in-person interaction and examination of a claimant." *Nelson v. Berryhill*, 2017 WL 2432160, at *11 (D. Or. May 9, 2017). The regulations specify that for non-examining sources, "we will evaluate the degree to which these medical opinions consider *all of the pertinent evidence in your claim*[.]" 20 C.F.R. § 404.1527(c)(3) (emphasis added). Thus, the ALJ did not err when he gave less weight to Dr. Levine's opinion due to Dr. Levine not having reviewed the entire record.

### c. Internal Inconsistency

The ALJ also found Dr. Levine's opinion internally inconsistent. AR 22. Specifically, the ALJ noted that Dr. Levine's opined limitations were not consistent with observations that plaintiff's foot impairments healed before the onset date nor were they consistent with his observation of activities plaintiff performed. AR 21.

### i. Impairments of Foot Healed Before Onset Date

Dr. Levine noted that plaintiff's multiple foot surgeries occurred before the onset date and that each procedure would be expected to heal within two to four months. AR 202. But he added that a person could have "some residual limitations" from the procedures. *Id.*

The ALJ offers no explanation for why Dr. Levine's limitations were inherently inconsistent with the fact that plaintiff healed from her surgeries before the onset date. The ALJ seems to equate healing with a restoration to full function. Such reasoning is erroneous. That someone heals from a surgery does not necessarily mean they no longer experience limitations. Dr. Levine explicitly stated that his opinion "allow[ed] for some limitation in the right foot secondary to the multiple surgeries and the degenerative changes" he previously noted. AR 205. The ALJ's conclusion here is therefore unsupported by substantial evidence.

### ii. Observed Activities

Dr. Levine found that plaintiff's foot impairment did not meet the listing requirements because evidence of plaintiff's activities in the record indicated she was able to effectively ambulate. AR 203. He cited activities plaintiff reported in the record such as yard work, driving, preparing food, and independently dressing and bathing. *Id.*

He also noted that physical examinations showed plaintiff could hop, did not limp, could get out of a chair, and get up and down off the exam table without difficulty. *Id.*

The ALJ did not explain why these activities were inconsistent with Dr. Levine's limitations. Nothing in the record suggests that performance of such activities required plaintiff to walk or stand for longer than three hours or lift and carry more weight than Dr. Levine opined. *See* AR 205-06. The described activities also do not inherently require the climbing of ladders or scaffolds, being near heavy vibratory equipment or unprotected heights, or exposure to extreme cold. *Id.* The ALJ did not explain, and the Court cannot discern, how the cited activities were inconsistent with the opined limitations and therefore this reason is not supported by substantial evidence.

### d. Inconsistency with Record

The ALJ found that Dr. Levine's limitations on lifting, standing, and walking were inconsistent with Dr. Gaffield's exam. AR 21. Dr. Gaffield opined no limits in plaintiff's ability to stand, walk, or sit in an 8-hour workday with adequate breaks and rest periods, and that her maximum lifting and carrying capacity was 50 pounds occasionally and 25 pounds frequently. AR 1373. In contrast, Dr. Levine limited plaintiff to lifting 20 pounds occasionally and 10 pounds frequently and limited her to only occasionally carrying 10 pounds. AR 205. Dr. Levine also limited how long plaintiff could walk or stand. *Id.*

The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008). The ALJ cited the specific findings of Dr. Gaffield to discount Dr. Levine's opinion. The conflicting opinion of an examining doctor is sufficient to justify the rejection of a non-examining doctor. *Clark v. Colvin*, 2013 WL 6189726, at *3 (W.D.

15

Wash. Nov. 26, 2013). The ALJ did not err in rejecting Dr. Levine's opinion on this basis.

The ALJ also found that Dr. Levine's limitations were not consistent with Dr. McNaughton's normal physical exams and only minor or temporary complaints. AR 21 (citing AR 1655-72, 1678-95, 1704-30). The ALJ cited broadly to the pages in the record containing Dr. McNaughton's treatment notes and did not specify any evidence from the record to support his conclusion. Such broad reference to Dr. McNaughton's notes does not satisfy the requirement that the ALJ point to specific evidence in the medical record to discount a non-examining physician's opinion. *Irwin*, 2025 WL 1734466, at *1 (quoting *Farlow*, 53 F.4th at 488). It was error for the ALJ to discount Dr. Levine's opinion on this basis.

### e. Citation Support

Finally, the ALJ gave Dr. Levine's opinion little weight because he did not sufficiently support his limitations with citations.

An ALJ may properly discount a medical opinion where the doctor does not explain the basis for their limitations or when the opinion is inadequately supported by clinical findings. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). Here, Dr. Levine cited the page numbers of relevant exhibits when testifying (including operative reports, treatment notes, and x-rays) and specified before opining his RFC that he was allowing for some limitation in the right foot secondary to the multiple surgeries and degenerative changes mentioned. AR 205. Dr. Levine described the relevant medical evidence, providing citations along the way, and opined his limitations. The assertion that Dr.

Levine failed to support his opinion with citations is factually incorrect and therefore unsupported by the record.

**Harmless error**

An error that is inconsequential to the non-disability determination is harmless. *Stout,* 454 F.3d at 1054. If the errors of the ALJ result in a residual functional capacity (RFC) that does not include relevant work-related limitations, the RFC is deficient, and the error is not harmless. *Id.* at 1052, 1054; *see also Carmickle,* 533 F.3d at 1160. Because the ALJ offered two legitimate reasons for discounting Dr. Levine's opinion, the ALJ's additional erroneous reasons are inconsequential to the disability determination and therefore harmless. The ALJ reasonably discounted the opinion of Dr. Levine.

   4. **Plaintiff's statements regarding subjective symptoms**

Plaintiff contends that the ALJ erred by failing to provide clear and convincing reasons for rejecting her subjective complaints. Dkt. 25 at 12. The Court has concluded that the ALJ committed harmful error and must order a consultative examination on remand. *See supra*, Section 1. In addition, a determination of a claimant's credibility relies in part on the assessment of the medical evidence. *See* 20 C.F.R. § 404.1529(c). An additional medical opinion could impact the evaluation of plaintiff's testimony. Plaintiff's credibility should be assessed anew following remand of this matter.

   5. **Lay witness evidence**

Plaintiff argues that the ALJ failed to cite germane reasons to reject the lay witness statements. Dkt. 25 at 16. The ALJ rejected the lay witness statements based on inconsistency with the medical record. AR 22. The Court has concluded that the ALJ committed harmful error and must order a consultative examination on remand. *See*

*supra,* Section 1. An additional medical opinion could impact the evaluation of the lay witness evidence. The lay witness statements should be assessed anew following remand of this matter.

## CONCLUSION

For these reasons, the Court concludes the ALJ improperly determined plaintiff to be not disabled. Therefore, the ALJ's decision is reversed and remanded for further administrative proceedings. The ALJ is directed to order an examination and evaluation of plaintiff to determine the nature and extent of plaintiff's cognitive impairment; develop the evidence necessary to assess whether under *Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001) plaintiff's chronic marijuana use or other drug use would be a factor to be considered under the two-part *Bustamante* process; and proceed with the sequential analysis as necessary.

The ALJ shall not reject evidence based on the timing of the evaluation, in contravention of Ninth Circuit precedent. *See Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1232 (9th Cir. 2011) (quoting *Lester v. Chater*, 81 F.3d 821, 832 (9th Cir. 1996)) ("this court has specifically held that medical evaluations made after the expiration of a claimant's insured status are relevant to an evaluation of the preexpiration condition."); *Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988) (holding "reports containing observations made after the period for disability" that retrospectively analyze the claimant's pre-expiration condition "are relevant to assess the claimant's disability.").

Dated this 8th day of September, 2025.

*Theresa L. Fricke*

Theresa L. Fricke
United States Magistrate Judge